Matter of Daleena Q.T. (Wanda W.) (2022 NY Slip Op 07016)

Matter of Daleena Q.T. (Wanda W.)

2022 NY Slip Op 07016

Decided on December 08, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 08, 2022

Before: Kapnick, J.P., Oing, Singh, Moulton, Pitt-Burke, JJ. 

Docket No. B-43881-16 B-43882-16 Appeal No. 1682016820A Case No. 2021-01623 

[*1]In the Matter of Daleena Q.T. , And Another Dependent Children Under Eighteen Years of Age, etc., Wanda W., Respondent-Appellant, Seamen's Society for Children and Families, Petitioner-Respondent. 

Bruce A. Young, New York, for appellant.
John R. Eyerman, New York, for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Judith Stern of counsel), attorney for the child.

Orders of disposition, Family Court, New York County (Valerie Pels, J.), entered on or about April 22, 2021, which, upon findings of permanent neglect, terminated respondent mother's parental rights to the subject children and committed custody and guardianship of the children to petitioner agency and the Commissioner for the Administration for Children's Services for the purpose of adoption, unanimously modified, on the facts, to vacate the order terminating respondent's parental rights to the child D. and freeing her for adoption, and to remand the matter to Family Court for a new dispositional hearing regarding D.'s best interests, and otherwise affirmed, without costs.
The agency demonstrated by clear and convincing evidence that it made the requisite diligent efforts to strengthen the parental relationship (see Social Services Law § 384-b[7][a]; Matter of Sheila G., 61 NY2d 368, 373 [1984]). The evidence shows that it developed an appropriate service plan, repeatedly referred the mother to mental health services and other programs, made home visits to ensure that her living arrangements were suitable for the children, scheduled regular case planning conferences, informed the mother of each child's progress, development and health, and arranged for visitation, including therapeutic visits with three different providers. Despite these diligent efforts, and the mother visiting the children and engaging in some services, overall, the mother failed to plan for the children, as she continued to exhibit aggressive and volatile behavior toward agency staff and the foster parents, and repeatedly accused multiple foster care families of abusing the children (see Matter of Nahzzear Y.G. [Tanisha N.], 172 AD3d 526, 526 [1st Dept 2019], lv denied 33 NY3d 1113 [2019]). She also refused to sign HIPAA consent forms to allow the agency to monitor her mental health progress, and repeatedly refused to sign consent forms for the children to receive mental health evaluations and services, despite evidence that their behavior was worsening (see Matter of Shilloh M.J. [Jamesina M.J.], 183 AD3d 540, 541 [1st Dept 2020]; Matter of Nahzzear Y.G., 172 AD3d at 526). To the extent the mother engaged in therapeutic visits, there was no evidence that she gained any insight into her behavior or otherwise benefitted from the service long-term, because she reverted back to the same behavior after the therapeutic supervisor ceased to be involved in the case.
The court's finding that termination of the mother's parental rights was in the children's best interests is supported by a preponderance of the evidence (see Matter of Star Leslie W., 63 NY2d 136, 147-148 [1984]). The record shows that the child J. was doing well living with the foster mother, who had cared for him since 2018, and that the foster mother wished to adopt him (see Matter of Raul R. [III] [Raul R.—Cinthia R.], 199 AD3d 594, 595 [1st Dept 2021], lv denied 38 NY3d 944 [2022]). Although the record also supports [*2]the determination that termination of the mother's parental rights to D. was in her best interests, we remand the matter for a new dispositional hearing with respect to her due to changed circumstances (see Matter of Michael B., 80 NY2d 299, 318 [1992]). Her attorney has advised that she is no longer in the same preadoptive foster home, is now 15 years old, and does not consent to being adopted (see Matter of Shilloh M.J., 183 AD3d at 541).
We have considered the mother's remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 8, 2022